GRAHAM LAW FIRM
Monica Graham, Esq.  SBN 332241
3857 Birch St PMB 3097
Newport Beach, CA 92660
Tel 949-284-6870 951-316-3298
monica@grahamlawfirm-ca.com

Attorney for Plaintiff
Vachagan Stephen

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

VACHAGAN STEPHEN,

          Plaintiff,

vs.

RITE AID HDQTRS. CORP. and
Does 1-10, inclusive,
          Defendants.

) CASE NO. 2:20-cv-05601-MWF
)
) **MEMORANDUM OF POINTS AND**
) **AUTHORITIES IN SUPPORT OF**
) **PLAINTIFF'S MOTION FOR**
) **SUMMARY JUDGMENT, OR,**
) **ALTERNATIVELY, PARTIAL**
) **SUMMARY JUDGMENT**
)
) Date:      September 27, 2021
) Time:     10:00 a.m.
) Location:  Courtroom 5A, 5th Floor
) Judge:    Hon. Michael W. Fitzgerald

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff filed this suit in federal court on June 4, 2020, alleging that

defendant violated the Telecommunications Consumer Protection Act ("TCPA")

by placing calls to plaintiff's cell phone using prerecorded messages, without his

prior express consent. The complaint alleges both negligent and willful violations of the Act.  Plaintiff alleges that he never gave defendant Rite Aid Corp. express consent to call his telephone number and to the extent Rite Aid called plaintiff's cellular telephone for emergency purposes to communicate with "Patient Maria," plaintiff revoked consent for Rite Aid to call his number effective July 17, 2019. Accordingly, all prerecorded message calls ("Robocalls") were placed without express consent, in violation of TCPA after plaintiff revoked consent 7/17/19.

## II. STATEMENT OF FACTS

Plaintiff began received annoying robocalls from Rite Aid on his cellular telephone number 818-641-8880 around 2018. (Stephen Decl. ¶3).  Plaintiff revoked consent July 17, 2019 when he visited the Pacoima branch and spoke with the pharmacy manager, Hayk Harutyunyan ("Hayk"), and expressly told him that he did not want to receive phone calls from Rite Aid, and that Rite Aid did not have the correct telephone number for "Patient Maria" (*Id.*, ¶¶5-6).  Plaintiff stood and watched as Hayk telephoned what Plaintiff was told was the corporate office, and Plaintiff heard Hayk ask to stop the calls that were being made to Plaintiff. (*Id.*, ¶6). The calls did not stop until Plaintiff threatened to file suit against Rite Aid, end of December, 2019.  (*Id.,* ¶7).  Moreover, Patient Maria was not a subscriber to Plaintiff's cellular telephone and Plaintiff never gave Rite Aid consent to call 818-641-8880. (*Id.,* ¶¶3, 6).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### III.    ARGUMENT

### A.  This Motion Meets the Standard for Summary Judgment.

A motion for summary judgment should be granted where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Id.* at 323.

Here, Plaintiff seeks summary judgment for negligent and willful violation of TCPA, which is supported by the statement of uncontroverted facts, declaration of Vachagan Stephen ("Stephen Declaration") and evidence attached thereto.

### B.  Plaintiff is Entitled to Summary Judgment for Defendant's Violation of Telephone Consumer Protection Act of 1991

The TCPA makes it "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C). The TCPA generally prohibits making nonemergency, unsolicited calls advertising "property, goods, or services" using automatic dialing systems

and prerecorded messages to telephones and cellular phones. Id. § 227(a)(5); id. § 227 (b)(1)(A)(iii).

## C. Any Telephone Call Made with a Prerecorded Voice to a Cellular Telephone Violates the TCPA Unless Made for Emergency Purposes or With the Recipient's "Prior Express Consent."

The Telephone Consumer Protection Act ("TCPA") prohibits making nonemergency calls made to cell phones with auto-dialers or by a prerecorded voice message unless the called party has given permission by "prior express consent" to allow receipt of such calls.  47 U.S.C. § 227(a)(5); §227 (b)(1)(A)(iii).

The FCC has clarified that consumers may revoke consent in its July 2015 Declaratory Ruling and Order. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd. 7961 (July 10, 2015) (the "2015 Order"). The 2015 Order stressed that consumers "have a right to revoke consent, using any reasonable method including orally or in writing." *Id*. at 7996. The FCC emphasized that the TCPA does not permit the calling party to designate the exclusive means of revocation, and instead, the called party must "clearly express his or her desire not to receive further calls." Id. at 7997 ¶ 67. It is reasonable for the FCC to interpret the TCPA to permit revocation of consent. See *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 843–44 (1984).

///

Here, Plaintiff revoked consent using a reasonable method by going to the pharmacy of the branch that was placing the robocalls and orally requested the pharmacy manager to stop the annoying calls.  Plaintiff spoke directly to Hayk Harutyunyan in the Pacoima branch July 17, 2019.  All calls prior to that date, Rite Aid could rely on the emergency healthcare exception.  However, once Plaintiff orally revoked consent and specifically communicated to Rite Aid that the number it was calling for "Patient Maria" was the wrong number, Rite Aid could no longer rely on the emergency exception.  In sum, once Plaintiff revoked consent July17, 2019, all robocalls subsequent thereto were prohibited, non-emergency calls, as Rite Aid was notified that it could not reach Patient Maria at 818-641-8880.

Rite Aid was negligent in failing to stop the robocalls and consequently, communicating with its own patient, whether it had accurate records.  Moreover, if Rite Aid did not have a correct telephone number for its own patient, the only logical emergency was for Rite Aid to communicate with its patient using accurate information, without harassing innocent consumers such as plaintiff with annoying phone calls, which is exactly what TCPA was enacted for.

There is no issue of material fact as to revocation of consent.  Rite Aid did not maintain records of when consumers revoked consent in the branches, other than what Rite Aid calls "submitting a ticket, and that ticket has been proven by virtue of the Incident Report dated July 17, 2019.  The Incident Report confirms

plaintiff's revocation. (Stephen Decl. ¶5; Incident Report attached as Exhibit 3).

### D. Rite Aid Could Not Make Unwanted Calls to Plaintiff for "Patient Maria's" Alleged Emergency

The U.S. Court of Appeals holds that "prior express consent required by the TCPA for autodialed calls to cellular phones *must* come from the current subscriber and not the intended recipient of the call. *N. L. v. Credit One Bank, N.A.*, No. 19-15399 (9th Cir. 2020) held that the consent of the person it intended to call did not exempt Credit One from liability under the TCPA.  What this means is that Rite Aid may not rely on its "emergency purpose" defense when it did not have Patient Maria's consent as the user of the cell phone, to call Plaintiff's number.  But the fatal blow to Rite Aid's position is the fact that it received actual notice of Plaintiff's revocation of consent on July 17, 2019, and that he did not know Patient Maria and that it was not her cell phone number.

### E. Rite Aid's Robo-Calls Were Unsolicited as Of July 17, 2019

In relationships between consumers and businesses, providing one's phone number has generally been deemed to constitute implied consent to communications that are closely related to the purpose for which the number was provided. See, e.g., *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *8 (W.D. Wash. Feb. 27, 2014), aff'd, No. 14-35208, 668 Fed.Appx. 795, 2016 WL 4709873 (9th Cir. Sept. 9, 2016).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff never gave Defendant consent to communicate with him at telephone 818-641-8880. If Defendant had consent from Patient Maria, Defendant was unable to prove when that consent was most recently given to it by Patient Maria. (Jacobson Deposition p.14:23-25, p.15:1-11 [excerpts attached to Stephen Declaration, Exhibit 7]; Rite Aid's Supplemental Response to Plaintiff's Interrogatories Set One, No. 7 attached to Stephen Declaration, Exhibit 6).  Hence, effective with Plaintiff's revocation, Rite Aid was no longer privileged to call telephone number 818-641-8880. Recently, the U.S. Court of Appeals for the Ninth Circuit held that express consent from the *intended* recipient of a call does not exempt a caller from liability under the TCPA when the incorrect person receives the call at issue.  Therefore, the Ninth Circuit is clear, that Rite Aid is not exempt from TCPA because it *intended* to call Patient Maria or had consent from Patient Maria absent evidence that Patient Maria was the user of telephone number 818-641-8880 at the time of the violations.  In *N. L. v. Credit One Bank, N.A.*

**F.  Rite Aid Placed Calls Using Prerecorded Messages to Cellular Phones**

To be held directly liable under the TCPA, the defendant must be the one who initiates the unsolicited prerecorded telephone call. Communications Act of 1934 § 227(b)(1)(B), 47 U.S.C.A. § 227(b)(1)(B); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019); *Kauffman v. CallFire, Inc.*, 141 F.Supp.3d 1044, 1047–48 (S.D. Cal. 2015).  To meet his burden of proof, Plaintiff provided

recordings of the prerecorded messages in discovery. Stephen Decl. ¶4. Further, Rite Aid admitted in its deposition that the calls were prerecorded and/or created using an artificial voice.  Jacobson Deposition p.19:21-25, p.20-21, p.22:1-21. This evidence provides unrebutted proof that Rite Aid placed calls using prerecorded messages or artificial voice to Plaintiff's cellular phone in violation of TCPA subsequent to Plaintiff's 7/17/19 revocation.

### G. Rite Aid's TCPA Violations Were Committed Willfully

On July 17, 2019, Rite Aid acquired actual knowledge that Plaintiff revoked consent to call him and that unequivocally, Plaintiff did not know Patient Maria and that he did not want to receive Rite Aid's phone calls.  (Stephen Decl. ¶¶3, 6). Rite Aid acquired this knowledge =, by and through its pharmacy manager, Hayk Harutyunyan, who assisted Plaintiff by notifying the corporate office and "submitting a ticket."  The prerecorded message instructs the customer to notify the pharmacy to stop receiving calls, and that's what Plaintiff did. (Id., ___).  By law, Rite Aid could place one safe harbor call to Plaintiff, without liability, however, it willfully continued to place unwanted calls to Plaintiff's cell phone.

### H. Rite Aid Has Admitted to Making 150 Calls to Plaintiff's Cellular Telephone

Plaintiff alleged in his second amended complaint that he received more than 150 robocalls from defendant Rite Aid without his consent.  Rite Aid admitted to placing 150 calls in its written discovery responses to Plaintiff.  (Stephen Decl.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Exhibit 7.  As such, Plaintiff is entitled to damages in the amount of $1,500.00 per call, pursuant to 47 U.S.C. §227(b)(3), for Rite Aid's negligent and willful violation of TCPA.  Rite Aid was negligent for not having systems in place to monitor, log and track consumer complaints.  Rite Aid testified that it accepts oral consumer complaints and that consumers may communicate with the branch, but that Rite Aid only maintained records at its corporate office.  Rite Aid is likely to continue to violate TCPA if it fails to maintain a better system.

Rite Aid's violation was willful, in that it was notified July 17, 2019, that plaintiff told Rite Aid not to call him anymore, in that Rite Aid never had consent from the user of 818-641-8880 to make the robocalls, and Rite Aid therefore had one safe harbor call to place to Plaintiff, to notify him that Rite Aid would stop calling.  Given that Rite Aid had actual notice of Plaintiff's communication, all robocalls subsequent to revocation violated TCPA.  Just because Rite Aid lacks efficacy in developing strong customer support, it is not exempt from willful violations because the right hand did not know what the left hand was doing.  The robocalls should have stopped as the legislation intended.

## IV.    CONCLUSION

Ultimately, the question before the Court is whether the record, as a whole, could lead a rational trier of fact to find that defendant Rite Aid placed robocalls to Plaintiff's cellular telephone, that Plaintiff effectively revoked consent on 7/17/19,

and that Rite Aid placed the calls using prerecorded messages or artificial voice after 7/17/19. Given that Plaintiff has proven each element under TCPA, and defendant has no adequate defense, there is no genuine issue for trial.

Plaintiff is entitled to summary judgment since Rite Aid continued to call Plaintiff with prerecorded calls or artificial voice *after* he revoked consent July 17, 2019, which also revoked any good faith belief maintained by Rite Aid that it was communicating with Patient Maria.

Dated:  August 26, 2021                          GRAHAM LAW FIRM

                                                 s/Monica Graham
                                                 Monica Graham, Esq.
                                                 Attorney for Plaintiff
                                                 Vachagan Stephen

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**